**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**BRAY SHEET METAL COMPANY;
EDWARDS METALS, INC.;
KETCHER & COMPANY, INC.; and
HSI, INC. D/B/A HARVEY SHEET METAL, INC.**                    **PLAINTIFFS**

**v.**                    **Case No. 4:20-cv-00695-KGB**

**INTERNATIONAL ASSOCIATION
OF SHEET METAL, AIR, RAIL AND
TRANSPORTATION WORKERS (SMART)
LOCAL UNION NO. 36-L, AFL-CIO**                    **DEFENDANT**

## ORDER

Before the Court is a motion to dismiss for lack of subject matter jurisdiction and failure

to state a claim filed by defendant International Association of Sheet Metal, Air, Rail and

Transportation Workers Local Union No. 36-L, AFL-CIO ("Union") (Dkt. No. 11).  Also before

the Court is the Union's motion to dismiss plaintiffs' June 19, 2020, amended complaint for lack

of subject matter jurisdiction and failure to state a claim (Dkt. No. 15).  For the following reasons,

the Court denies as moot the Union's motion to dismiss plaintiffs' original complaint (Dkt. No.

11), and the Court denies the Union's motion to dismiss plaintiffs' amended complaint (Dkt. No.

15).

### I.    Background

The Union is a labor organization that represents employees in the sheet metal trade (Dkt.

No. 12, at 3).  Bray Sheet Metal Company ("Bray"), Edwards Metals, Inc. ("Edwards"), Ketcher

& Company, Inc. ("Ketcher"), and HIS, Inc. d/b/a Harvey Sheet Metal, Inc. ("Harvey"), are sheet

metal contractors that were previously members of a multiemployer bargaining unit that entered

into several consecutive collective bargaining agreements ("CBA") with the Union (Dkt. No. 13,

¶ 1).  The most recent agreement between the parties went into effect on June 1, 2017 ("2017 Agreement") (*Id.*).  The parties disagree over the language of the 2017 Agreement, specifically whether the 2017 Agreement includes interest arbitration, as the Union contends, in Article X, Section 8, or whether that section is void *ab initio*, as plaintiffs Bray, Edwards, Ketcher, and Harvey contend (*Id.*, ¶¶ 2, 3).

Based upon allegations in plaintiffs' amended complaint, the multiemployer bargaining unit that plaintiffs were a part of had a contract with the Union that went into effect on June 1, 2015, and was set to expire on May 31, 2017 ("2015 Agreement") (*Id.*, ¶ 29).  The 2015 Agreement included a provision stating that, if the parties reached an impasse, they agreed to submit the dispute to interest arbitration before the National Joint Adjustment Board ("NJAB") (*Id.*, ¶ 30).  In or about May 2017, the multiemployer bargaining unit began bargaining with the Union for a new agreement (*Id.*, ¶ 31).  On June 6, 2017, the Union and the multiemployer bargaining unit reached agreement on proposed economic terms (*Id.*, ¶ 33).

According to plaintiffs, the multiemployer bargaining unit and the Union discussed but did not reach an agreement as to non-economic terms during the June 6, 2017, meeting (*Id.*).  An agent of the Union, David Zimmerman, then sent a revised copy of the proposed agreement to some but not all of the contractors in the multiemployer bargaining unit and instructed the contractors to respond to the proposed changes (*Id.*, ¶ 36).  According to plaintiffs, no contractor ever responded approving the proposed terms in the revised draft of the agreement, and the Union's members later voted against the proposed economic terms (*Id.*, ¶¶ 37, 38).  Therefore, according to plaintiffs, the parties did not reach an agreement on any economic or non-economic issue and continued to negotiate (*Id.*, ¶ 38).

During a bargaining session on or about August 10, 2017, Bray, Edwards, and Harvey, with aid of counsel, submitted proposals for revisions of the non-economic terms in the Union's standard form of union agreement for negotiation and consideration for the 2017 Agreement, according to plaintiffs (*Id.*, ¶ 41).  Plaintiffs assert that Bray, Edwards, and Harvey objected specifically to inclusion of Article X, Section 8, regarding interest arbitration and argued that the interest arbitration provision in the 2015 Agreement was void and unenforceable (*Id.*, ¶ 42).

According to plaintiffs, Mr. Zimmerman left the August 10, 2017, meeting without reviewing or responding to the contractors' non-economic proposals and refused to set a date for further negotiations (*Id.*, ¶ 43).  Plaintiffs claim that, after several failed attempts to reach an agreement, the Union unilaterally declared impasse and submitted the dispute to NJAB (*Id.*, ¶ 44). Bray, Edwards, and Harvey filed a response, arguing that NJAB lacked jurisdiction because the interest arbitration provision in the 2015 Agreement was void and unenforceable (*Id.*, ¶ 47).  They also argued that, if NJAB exercised jurisdiction, it should order the parties to continue negotiations because the Union had prematurely and unilaterally declared impasse without reviewing or responding to the non-economic proposals they had presented (*Id.*).

NJAB denied the contractors' motion and instructed them to submit supplemental information regarding their negotiating positions (*Id.*, ¶ 48).  According to plaintiffs, Bray, Edwards, and Harvey submitted proposed economic terms and limited their proposed terms to a one-year agreement, unless NJAB adopted the non-economic proposals they had previously presented to the Union, which included striking Article X, Section 8, from any successor agreement (*Id.*, ¶ 49).

NJAB issued a written opinion and directed the parties to execute a three-year agreement with the same terms and conditions as were tentatively agreed to by the Union and the

multiemployer group on June 6, 2017 (*Id.*, ¶ 51).   The NJAB found that the multiemployer group had no clear spokesperson and appeared before the Board with conflicting positions, so the Board looked for the most recent point in negotiations when the multiemployer unit held a cohesive position, which the Board determined to be the tentative agreement with the Union on June 6, 2017 (*Id.*).   Therefore, the NJAB imposed the second draft of the CBA based on its finding that "the last consensus position held by the multiemployer group was the June 6, 2017 tentative agreement with the Local Union, which included Article X, Section 8," and, according to plaintiffs, that the multiemployer unit did not agree at the time of the arbitration (*Id.*, ¶ 52).

Plaintiffs assert that, on September 18, 2017, counsel for Bray, Edwards, and Harvey objected to the NJAB decision *via* email (*Id.*, ¶ 54).   They objected to the NJAB decision in whole and objected specifically to the NJAB finding that the June 6, 2017, tentative agreement included Article X, Section 8 (*Id.*).   Plaintiffs assert that neither Bray, Edwards, Harvey, nor Ketcher ever signed the 2017 Agreement or agreed to inclusion of Article X, Section 8 (*Id.*, ¶ 55).

Plaintiffs represent that they each tendered timely their notice to withdraw from the multiemployer bargaining unit on December 23, 2019 (*Id.*, ¶ 56).   On February 24, 2020, plaintiffs submitted written notice to the Union of their desire to reopen negotiations for a successor agreement (*Id.*, ¶ 57).   In the letter, plaintiffs noted specifically their position that Article X, Section 8, imposing interest for a successor agreement was not in the 2017 Agreement because they contend that they had not agreed to its inclusion and that the 2017 Agreement was imposed *via* interest arbitration (*Id.*, ¶ 58).   Beginning in May 2020, plaintiffs each engaged in the process of bargaining for individual contracts with the Union (*Id.*, ¶ 59).

The parties conducted bargaining sessions with the assistance of two mediators from the Federal Mediation and Conciliation Services (*Id.*, ¶ 63).   Plaintiffs claim that, on May 26, 2020,

the Union informed them that it intended to invoke the interest arbitration provision to settle a successor agreement to the 2017 Agreement (*Id.*, ¶ 64).  Plaintiffs contend that counsel for the Union made it clear the only way the issue of whether the 2017 Agreement included Article X, Section 8, would be resolved was by the Eighth Circuit Court of Appeals (*Id.*).

Plaintiffs brought this cause of action on May 29, 2020, seeking a declaratory judgment that Article X, Section 8, of the 2017 Agreement is void and unenforceable as a matter of law and therefore that plaintiffs have no obligation to participate in proceedings before NJAB or to abide by any decision of it (Dkt. No. 1, ¶ 8).  According to plaintiffs, on June 3, 2020, the Union reiterated its intent to submit the dispute to interest arbitration before NJAB (Dkt. No. 13, ¶ 65).  On that same day, plaintiffs assert that they provided written notice that they were terminating their relationship with the Union (*Id.*).

Plaintiffs filed a motion for preliminary injunction on June 4, 2020, seeking to prevent the Union from imposing another agreement *via* interest arbitration during this litigation (Dkt. Nos. 3, 4).  According to plaintiffs, on June 8, 2020, the Union sent plaintiffs a grievance letter alleging that their termination violated the 2017 Agreement (*Id.*, ¶ 66).  On June 11, 2020, plaintiffs filed an amended motion for preliminary injunction seeking to prevent the Union from proceeding with interest arbitration or grievance arbitration during this litigation (Dkt. No. 10).  The Union filed a motion to dismiss on June 12, 2020 (Dkt. No. 11).  Plaintiffs filed an amended complaint on June 19, 2020 (Dkt. No. 13), and defendants filed a motion to dismiss plaintiffs' amended complaint (Dkt. No. 15).  Further, on June 24, 2020, defendants withdrew the June 8, 2020, grievance and stated defendants would "be submitting the pending Article X, Section 8 interest arbitration dispute

to the National Joint Adjustment Board (NJAB), and will wait for a decision from the NJAB on

the Article X, Section 8 submission." (Dkt. No. 16-1).[1]

The parties' 2017 Agreement provides, in pertinent part:

Article X
The Union and the Employer, whether party to this Agreement independently or as
a member of a multiemployer bargaining unit, agree to utilize and be bound by this
Article.
. . .

Section 8.   In addition to the settlement of grievances arising out of
interpretation or enforcement of this Agreement as set forth in the preceding section
of this Article, any controversy or dispute arising out of the failure of the parties to
negotiate a renewal of this Agreement shall be settled as hereinafter provided:

a.  Should the negotiation for a renewal of this Agreement or negotiations
    regarding a wage/fringe reopener become deadlocked in the opinion of the
    Union representative(s) or of the Employer(s) representative(s) or both,
    notice to that effect shall be given to the National Joint Adjustment Board.

. . .

The dispute shall be submitted to the National Joint Adjustment Board
pursuant to the rules as established and modified from time to time by the
National Joint Adjustment Board.   The unanimous decision of said Board
shall be final and binding upon the parties, reduced to writing, signed and
mailed to the parties as soon as possible after the decision has been reached.
There shall be no cessation of work by strike or lockout unless and until
said Board fails to reach a unanimous decision and the parties have received
written notification of its failure.

. . .

Article XVI

Section 1.  This Agreement shall become effective on the 1st of June 2017,
and remain in full force until the through the 31st of May, 2020, and shall continue
in force from year to year thereafter unless written notice of reopening is given not
less than ninety (90) days prior to the expiration date.  In the event such notice of
reopening is served, this Agreement shall continue in force and effect until
conferences relating thereto have been terminated by either party by written notice,
provided, however, that, if this Agreement contains Article X, Section 8, it shall

---

[1]  Based upon the Court's recent informal communication with all counsel, no arbitration
of matters raised in this lawsuit has been conducted to date.

continue in full force and effect until modified by order of the National Joint Adjustment Board or until the procedures under Article X, Section 8, have been otherwise completed.

Section 2.   If, pursuant to federal or state law, any provision of this Agreement shall be found by a court of competent jurisdiction to be void or unenforceable, all of the other provisions of this Agreement shall remain in full force and effect.  The parties agree to meet and negotiate a substitute provision.  If negotiations are unsuccessful, the issue may be submitted for resolution by either party pursuant to Article X, Section 8 of this Agreement.

. . .

Section 4.  Each Employer hereby waives any right it may have to repudiate this Agreement during the term of this Agreement or during the term of any extension, modification or amendment to this Agreement.

(Dkt. No. 13-1).

## II.    Legal Standard

The Union alleges that plaintiffs' claims run afoul of Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction to hear the case.  "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments.  "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir. 1993) (internal citations omitted).  At the motion to dismiss stage, because the gravamen of the motion to dismiss is subject matter jurisdiction, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).  Thus, when considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, plaintiff bears the burden of establishing jurisdiction.  *Id.*  In addition, the Court

can make credibility determinations and weigh conflicting evidence. *T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 961 (8th Cir. 2006).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). "[T]he complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Roe v. Nebraska*, 861 F.3d 785, 788 (8th Cir. 2017). A reviewing court "may consider these materials without converting the defendant's request to a motion for summary judgment." *Roe*, 861 F.3d at 788 (citations and quotation marks omitted); *see Lustgraaf v. Behrens*, 619 F.3d 867, 885–86 (8th Cir. 2010) ("[W]hen considering a motion to dismiss . . . , [a court] may take judicial notice (for the purpose

of determining what statements the documents contain and not to prove the truth of the documents'

contents) of relevant public documents[.]" (alterations in original) (emphasis omitted)).

When the running of the statute of limitations is raised as a defense, defendant has the

burden of affirmatively pleading and proving this defense, while "'[t]he party who is claiming the

benefit of an exception to the operation of a statute of limitations bears the burden of showing that

he is entitled to it.'" *Motley v. United States*, 295 F.3d 820, 824 (8th Cir. 2002) (quoting *Wollman

v. Gross*, 637 F.2d 544, 549 (8th Cir. 1980)).

### III.    Motion To Dismiss Plaintiffs' Original Complaint

Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend a pleading once

as a matter of course within 21 days after serving it or within 21 days after service of the responsive

pleading or a motion under Rule 12(b)(6).  Plaintiffs filed their original complaint on May 29,

2020, and the Union filed a motion to dismiss on June 12, 2020 (Dkt. Nos. 1, 11).  Plaintiffs then

filed an amended complaint on June 19, 2020, which is within 21 days of both the original

complaint and the Union's responsive pleading.  Plaintiffs filing of an amended complaint

rendered moot the Union's motion to dismiss the original complaint.  *See Pure Country, Inc. v.

Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002).  Accordingly, the Court denies as moot

the Union's motion to dismiss plaintiffs' original complaint (Dkt. No. 11).

### IV.    Motion To Dismiss Plaintiffs' Amended Complaint

The Union claims that plaintiffs' claims should be dismissed because the Court lacks

subject matter jurisdiction over this matter (Dkt. No. 16, at 3).  Plaintiffs counter that this Court

has jurisdiction to enter a declaratory judgment in this matter pursuant to § 301 of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. § 185;  the Declaratory Judgment Act, 28 U.S.C.

§ 2201; and federal question jurisdiction, 28 U.S.C. § 1331 (Dkt. No. 13, at 4).

Further, the Union argues that plaintiffs' claims should be dismissed because, under the Norris-LaGuardia Act, 29 U.S.C. § 101, the Court cannot issue plaintiffs' requested injunction (Dkt. No. 16, at 12).   Plaintiffs contend that this Court has jurisdiction to grant a preliminary injunction (Dkt. No. 17, at 15).

The Union also argues that, even if the Court does have subject matter jurisdiction, plaintiffs' claims are barred by the applicable statute of limitations because plaintiffs failed to file timely an action to vacate the 2017 NJAB award (Dkt. No. 16, at 8).  Plaintiffs claim that no statute of limitations bars their action to have a successive interest arbitration clause declared void as against public policy (Dkt. No. 17, at 6).

The Court addresses each of these issues below.

### A.      Subject Matter Jurisdiction

The Union contends that this case should be dismissed because the Court lacks subject matter jurisdiction over plaintiffs' amended complaint (Dkt. No. 16, at 3).  Plaintiffs argue that the Court has subject matter jurisdiction to enter a declaratory judgment in this matter under both § 301 of the LMRA and the Declaratory Judgment Act (Dkt. No. 17, at 2–3).  Plaintiffs also claim that the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the issue of interest arbitration in such agreements is a product of federal common law and because there is no state-law equivalent action (*Id.*, at 5).

Section 301(a) of the LMRA provides that a federal district court has jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce."   29 U.S.C. § 185(a).  The Supreme Court has drawn a distinction between "[s]uits for violation of contracts" and "suits that claim a contract is invalid."  *Needham Excavating, Inc. v. Int'l Union of Operating Eng'rs, Local 150*, Case No. 3:15-

cv-00093-SMR-SBJ, 2016 WL 9450447, at *2 (S.D. Iowa Jan. 5, 2016) (quoting *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace & Agric. Implement Workers of Am., Int'l Union,* 523 U.S. 653, 657 (1998)).

In *Textron,* the Supreme Court clarified that "[s]uits for violation of contracts under § 301(a) are not suits that claim a contract is invalid, but suits that claim a contract has been violated." 523 U.S. at 657. In *Textron*, the Supreme Court determined that § 301(a) does not confer jurisdiction over suits where a plaintiff offensively seeks to have a contract declared invalid but only over suits where a contract violation is alleged. *Id.* The Court clarified that its holding did not completely preclude a federal court from adjudicating the validity of a contract under § 301(a). *Id.* The Court identified two examples when contract validity can be raised in a union dispute. First, a defendant may assert contract invalidity as an affirmative defense once a plaintiff has passed through the "gateway" of § 301(a). *Id.* at 658. Second, "a declaratory judgment plaintiff accused of violating a [CBA] may ask a court to declare the agreement invalid" because in such situations "the federal court's power to adjudicate the contract's validity is ancillary to, and not independent of, its power to adjudicate '[s]uits for violation of contracts.'" *Id.* In *Textron,* the Court determined that the district court did not have § 301(a) jurisdiction because the plaintiff asserted no claims of contract violation and conceded that both parties were in compliance with the terms of the CBA. *Id.*

The United States Court of Appeals for the Eighth Circuit has not yet considered whether § 301(a) grants jurisdiction when a plaintiff has been accused of breaching a CBA and brings a declaratory judgment action in federal court disputing the validity of all or part of the CBA. However, other courts that have examined the issue have determined that § 301(a) jurisdiction exists under such circumstances pursuant to the dicta of *Textron.* For example, the Seventh Circuit

found that subject matter jurisdiction existed when a union member brought suit in federal court in response to a union's allegation that the union member was violating the terms of the parties' CBA. *J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers, Local Union 1*, 398 F.3d 967, 972–73 (7th Cir. 2005), *as amended on denial of reh'g and reh'g en banc* (Mar. 28, 2005); *see also J.F. New & Assocs., Inc. v. Int'l Union of Operating Eng'rs, Local 150*, No. 3:14-CV-1418 RLM, 2015 WL 1455258, at *4 (N.D. Ind. Mar. 30, 2015) (finding jurisdiction existed under § 301(a) when a union accused a company of violating a CBA and the company sought a declaratory judgment that the union had fraudulently induced it into signing the CBA); *Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 406 n.15 (5th Cir. 2014) (citing *Textron* for the proposition that "[a] plaintiff's claim that it (and not the defendant) allegedly violated a labor contract is sufficient to support [§] 301 jurisdiction" and finding that jurisdiction existed when plaintiff claimed that union alleged plaintiff had violated a CBA); *Fiend, Inc. v. Int'l All. of Theatrical Stage Emps.*, 827 F. Supp. 2d 1030, 1036 (D. Minn. 2011) (finding jurisdiction existed when plaintiff was accused by union of violating CBA).

A decision from the Southern District of Iowa is also illustrative. There, an employer filed suit seeking a declaratory judgment affirming that it was not bound by an agreement that the union claimed it had violated. *Needham Excavating, Inc.*, 2016 WL 9450447, at *1. The court determined that the requirement that a party need only allege the violation of a labor contract to invoke federal subject matter jurisdiction under § 301 had been satisfied so as to establish jurisdiction. *Id.*, at *4 (quoting *Houston Ref.*, 765 F.3d at 406) (emphasis in original)). The court held that the union accused the employer of violating the CBA and that the employer therefore responsively raised the invalidity of the CBA in its action for a declaratory judgment; therefore, the court determined jurisdiction existed under § 301(a). *Id.*

Here, the Union contends that an Eighth Circuit decision, *Gerhardson v. Gopher News Corporation*, precludes this Court from determining that jurisdiction exists under § 301(a). 698 F.3d 1052 (8th Cir. 2012). In *Gerhardson,* the Eighth Circuit explained that, "*Textron* only permits a litigant to raise the validity of a contract as an affirmative defense; it does not allow such claims to be asserted offensively." *Id.* at 1058. The Union argues that this Court lacks subject matter jurisdiction over plaintiffs' claim because plaintiffs initiated this lawsuit and are offensively asserting a claim for the invalidity of the 2017 Agreement as a gateway attempt to establish federal jurisdiction (Dkt. No. 16, at 5–6). However, in *Gerhardson,* the employer and union, along with Central States pension fund, were all named defendants in a cause of action initiated by employees. After dismissing the employee-plaintiffs' claims as time-barred, the Eighth Circuit found that the employer's claims against the union were not compulsory counterclaims but instead were cross-claims that could be brought in a separate action. The employer seeking to invalidate the CBA in *Gerhardson* was not situated similarly to the declaratory judgment plaintiff accused of violating a CBA, as contemplated in *Textron*. *See also Needham Excavating*, 2016 WL 9450447, at *4 n.2 (distinguishing *Gerhardson*).

The Court agrees with plaintiffs that subject matter jurisdiction exists pursuant to § 301(a) of the LMRA. Plaintiffs' request for a declaratory judgment affirming that Article X, Section 8, of the 2017 Agreement is invalid is the situation described in *Textron*; here, "a declaratory judgment plaintiff accused of violating a [CBA] may ask a court to declare the agreement invalid." 523 U.S. at 657. Plaintiffs assert in their amended complaint that either the Union is in violation of the 2017 Agreement by insisting that it has the right to force plaintiffs to interest arbitration or plaintiffs are in violation for refusing to participate in interest arbitration and giving their notice of termination of the agreement (Dkt. Nos. 13, ¶¶ 69–72; 17, at 2). Plaintiffs filed this action in

response to the Union's assertion that plaintiffs violated the 2017 Agreement and in response to the Union's attempt to bring these claims through arbitration.  Therefore, although plaintiffs initiated this action in federal court, the Court determines that plaintiffs are acting defensively, not offensively, because they claim that either they or the Union are in violation of the 2017 Agreement and seek a declaratory judgment that Article X, Section 8, of the 2017 Agreement is void and unenforceable as a matter of law.  The Court finds the procedural posture of this case sufficiently distinguishable from that presented in *Gerhardson*.  Therefore, the Court finds that it has subject matter jurisdiction pursuant to § 301(a) of the LMRA because plaintiffs bring a suit for a violation of a contract.  Accordingly, the Court denies the Union's motion to dismiss plaintiffs' amended complaint to the extent that the Union asserts this Court lacks subject matter jurisdiction over this matter.

Because the Court determines it has subject matter jurisdiction pursuant to § 301(a) of the LMRA, the Court declines to reach the parties' arguments regarding subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2201.

### B.    Norris-LaGuardia Act

The Union also argues that, even if this Court has subject matter jurisdiction over this dispute, plaintiffs' claims should be dismissed because, under the Norris-LaGuardia Act, the Court cannot issue plaintiffs' requested injunction (Dkt. No. 16, at 12).  Plaintiffs contend that this Court has jurisdiction to grant a preliminary injunction (Dkt. No. 17, at 15).

Federal courts generally do not have jurisdiction to issue injunctions in matters involving or growing out of a labor dispute.  *See* 29 U.S.C. § 101.  The Norris-LaGuardia Act, 29 U.S.C. § 101, provides:

> No court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor

shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

The Norris-LaGuardia Act applies to this dispute if it is a matter "involving or growing out of a labor dispute." 29 U.S.C. § 101. Numerous appellate courts have held that arbitration of a labor dispute is a matter "involving a labor dispute" within the meaning of the statute. *See, e.g.*, *Triangle Constr. & Maint. Corp. v. Our Virgin Islands Labor Union*, 425 F.3d 938, 945–46 (11th Cir. 2005); *AT & T Broadband, LLC v. Int'l Bhd. of Elec. Workers Local 21*, 317 F.3d 758, 759–60 (7th Cir. 2003); *Tejidos de Coamo, Inc. v. Int'l Ladies' Garment Workers' Union*, 22 F.3d 8, 13 (1st Cir. 1994); *Lukens Steel Co. v. United Steelworkers Local 1165*, 989 F.2d 668, 676 (3d Cir. 1993); *Camping Constr. Co. v. Dist. Council of Iron Workers Local 378*, 915 F.2d 1333, 1343 (9th Cir. 1990). This case law confirms that the present matter is a "labor dispute" subject to the Norris-LaGuardia Act.

Plaintiffs argue that § 301 of the LMRA provides the Court with jurisdiction to order a stay of arbitration proceedings conducted pursuant to a collective bargaining agreement, notwithstanding the Norris-LaGuardia Act (Dkt. No. 17, at 15–29). Section 301 grants the district court jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). The Norris-LaGuardia Act provides that strict requirements must be met before an injunction may be issued, including an evidentiary hearing, specified findings by the court, and certain other steps, including posting a bond. *See* 29 U.S.C. § 107. Six courts of appeals have ruled that the Norris-LaGuardia Act divests the court of jurisdiction to enjoin arbitration of a labor dispute in § 301 cases unless the requirements of the Act are met. *See Triangle Constr.*, 425 F.3d at 940; *AT & T Broadband*, 317 F.3d at 759–63; *Tejidos de Coamo*, 22 F.3d at 11-13; *Lukens Steel*, 989 F.2d at 676–79; *Camping Constr.*, 915 F.2d at 1340-

50; *In re Dist. No. 1–Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n*, 723 F.2d 70, 77 (D.C. Cir. 1983).

Here, the Court is not being asked to *compel* the parties to arbitrate, but instead plaintiffs ask this Court to issue an injunction *preventing* both interest arbitration and grievance arbitration from going forward (Dkt. No. 10, ¶ 22). Although there is a specific judicial exception to the Norris-LaGuardia Act under which courts may compel arbitration, *see Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457-59 (1957), courts have consistently rejected the argument that because a court may issue an order compelling arbitration in a § 301 case, it must also be able to enjoin an arbitration. *Triangle Constr.*, 425 F.3d at 948; *AT & T Broadband*, 317 F.3d at 761–62; *Tejidos de Coamo*, 22 F.3d at 12; *Lukens*, 989 F.2d at 678–79; *Camping Constr.*, 915 F.2d at 1343–44; *In re District No. 1*, 723 F.2d at 77. This is because the "limited judicial exceptions [to the Norris-LaGuardia Act] crafted in large part to effectuate Congress' strong preference for labor arbitration do not apply when a party asks for injunctive relief in order to avoid arbitration." *Triangle Constr.*, 425 F.3d at 952.

As explained, the Act provides that strict requirements must be met before an injunction may be issued, including an evidentiary hearing, specified findings by the court, and certain other steps, including posting a bond. *See* 29 U.S.C. § 107. The required findings by the court include that "unlawful acts have been threatened and will be committed," that absent an injunction, "substantial and irreparable injury to complainant's property will follow," and that public officers "are unable or unwilling to furnish adequate protection." *Id.* Further, the Norris-LaGuardia Act provides that an injunction may not be issued unless certain procedures have been met, such as not issuing an injunction except "after hearing the testimony of witnesses in open court (with

16

opportunity for cross-examination)." 29 U.S.C. § 107. These requirements and procedures have not been met yet.

Further, the Court acknowledges that, on the record before the Court, it is unclear whether plaintiffs can show, among other things, that they will suffer substantial and irreparable injury absent an injunction. 29 U.S.C. § 107. Some courts have determined that parties cannot show that participation in a labor arbitration would cause them irreparable harm because the expense of arbitration does not constitute irreparable injury. *See, e.g.*, *Triangle Constr.*, 425 F.3d at 947; *AT & T Broadband*, 317 F.3d at 762; *Tejidos de Coamo*, 22 F.3d at 14–15. Further, courts have considered insufficient to establish irreparable harm a concern over relief that the arbitrator might order because an arbitrator's award is not self-executing and is subject to review by the court. *Tejidos de Coamo*, 22 F.3d at 14; *see Fiend*, 827 F. Supp. 2d at 1033–34.

The Court's power to adjudicate substantive rights under § 301 of the LMRA does not alter the Norris-LaGuardia Act's requirements. *AT & T Broadband*, 317 F.3d at 761; *Tejidos de Coamo*, 22 F.3d at 15; *Triangle Constr.*, 425 F.3d at 952; *Camping Constr.*, 915 F.2d at 1346. For example, in *Tejidos de Coamo*, the court found that, although the district court had jurisdiction to grant declaratory relief on the issue of whether there was a collective bargaining agreement in force requiring disputes to be arbitrated, that determination need not precede the arbitration itself and that the Norris-LaGuardia Act deprived the court of jurisdiction to stay the arbitration. 22 F.3d at 12–15.

For these reasons, the Court determines that the Norris-LaGuardia Act does not serve as a basis to dismiss in its entirety plaintiffs' amended complaint. The Norris-LaGuardia Act impacts requests for injunctive relief but not requests for declaratory relief. Although the Court acknowledges plaintiffs have pending separate motions for preliminary injunction (Dkt. Nos. 3,

4), plaintiffs in their amended complaint seek a declaratory judgment (Dkt. No. 13, ¶¶ 67-72).  The Court denies the Union's motion to dismiss on this basis.

### C.    Statute Of Limitations

The Union also asserts that the applicable statute of limitations bars plaintiffs' claim because plaintiffs failed to file timely an action to vacate the 2017 NJAB award (Dkt. No. 16, at 8).  Plaintiffs assert that no statute of limitations bars their action to have a successive interest arbitration clause declared void as against public policy (Dkt. No. 17, at 6).

The Union contends that Eighth Circuit precedent makes clear "a party may not sit idle in the face of an arbitration award; failure to file a timely action to vacate forecloses and waives its claims." (Dkt. No. 16, at 8 (citing cases)).  The Union takes the position that an interest arbitration provision may be included in successive agreements by consent and that the NJAB found that the parties during the 2017 bargaining had consented to the inclusion of an interest arbitration provision (*Id.*, at 9).  Plaintiffs' claims now, according to the Union, are a quarrel with the merits findings of the 2017 NJAB arbitration award which plaintiffs did not challenge and are now time-barred from challenging (*Id.*).  The Union maintains this same rule applies to untimely challenges to interest arbitration awards and claims that an award violated public policy (*Id.*, at 8–10 (citing *Am. Metal Prods., Inc. v. Sheet Metal Workers Int'l Ass'n, Local Union No. 104*, 794 F.2d 1452 (9th Cir. 1986); *Plumbers' Pension Fund, Local 130 v. Domas Mech. Contractors, Inc.*, 778 F.2d 1266, 1267–68 (7th Cir. 1985); *Sheet Metal Workers' Int'l Ass'n. Local No. 252 v. Standard Sheet Metal, Inc.*, 699 F.2d 481 (9th Cir. 1983)).

The Union attempts to distinguish *Sheet Metal Workers' International Association, Local 14 v. Aldrich Air Conditioning, Inc.*, 717 F.2d 456 (8th Cir. 1983).  According to the Union, in *Aldrich Air Conditioning*, the dispute "involved a clear bargaining deadlock over the inclusion of

an interest arbitration," while here "the NJAB included the interest arbitration provision in the CBA because it found, based upon the evidence presented, that the *parties had agreed upon its inclusion in the successor agreement*." (Dkt. No. 16, at 10–11 (emphasis in original)).

In responding to this argument in the Union's motion to dismiss, plaintiffs rely upon what they characterize as "the basic legal premise that interest arbitration cannot be imposed via interest arbitration." (Dkt. No. 17, at 6 (citing *Aldrich Air Conditioning*, 717 F.2d at 459)). Based upon this premise, plaintiffs assert that "procedural mechanisms of the Federal Arbitration Act ('FAA') cannot be used to enforce a successive interest arbitration provision against public policy." (Dkt. No. 17, at 6). Plaintiffs attempt to distinguish the cases cited by the Union as grievance arbitration cases that do not raise public policy considerations (*Id.*, at 7). Plaintiffs assert that here "enforcing the FAA's procedural provisions would require this Court to give effect to a collective bargaining agreement contrary to public policy, which it cannot do." (*Id.*). Plaintiffs rely upon the "trilogy of *Atlas Air Conditioning*, *Systemaire*, and *Hope Electrical*" to argue that a motion to vacate is not the only method for preserving objection to an arbitrator's jurisdiction (*Id.*, at 8). Further, plaintiffs maintain that "[t]he Eighth Circuit has repeatedly refused to enforce interest arbitration imposed via interest arbitration, and Defendant does not cite any case where the Eighth Circuit has found a party waived its objection to a successive interest arbitration provision." (*Id.*, at 7).

Plaintiffs also dispute the Union's characterization of the NJAB's imposition of interest arbitration in the 2017 Agreement as a "finding of fact." (Dkt. No. 17, at 12–13). Instead, plaintiffs maintain that their claims present a "gateway question of arbitrability" properly before the Court (Dkt. No. 17, at 14 (citing *Int'l Bhd. of Elec. Workers v. Hope Elec. Corp.*, 380 F.3d 1084, 1089–90 (8th Cir. 2004)). Plaintiffs cite the following from the NJAB's decision in support of this assertion:

19

> [I]t is the judgment of this Board that the multiemployer group had no clear spokesperson. With no procedures or past practice as to how to resolve their internal disputes, the employers appeared before this Board with conflicting positions. Having no means to resolve this conflict for the employers, the Board has looked for the most recent point in the negotiations when the multiemployer group held a cohesive position. The record reflects the parties testified that the last consensus position held by the multiemployer group was the June 6, 2017 tentative agreement with the Local Union, which included Article X, Section 8.

(Dkt. No. 17, at 13 (quoting Dkt. No. 4-7)). Based on this, plaintiffs contend that "NJAB specifically stated that the multiemployer was not in agreement at the time of the arbitration, but imposed interest arbitration via interest arbitration anyway." (Dkt. No. 17, at 13). According to plaintiffs, this violated the requirement that the inclusion of interest arbitration result from the agreement of all parties (Dkt. No. 17, at 13). As a result, plaintiffs maintain the interest arbitration provision is void, not merely voidable (Dkt. No. 17, at 11–12).

Plaintiffs argue that, if required under these circumstances, they have presented "sufficient notice they object to successive interest arbitration" to preserve a jurisdictional challenge and to put the arbitrator on notice of a challenge to his authority (*Id.*, at 10). In support, plaintiffs cite: (1) their proposals striking Article X, Section 8 during negotiations; (2) their presentation of non-economic terms to NJAB that included striking Article X, Section 8; and (3) their presentation of economic proposals contingent on NJAB accepting their non-economic proposals (*Id.*). Plaintiffs maintain the NJAB was on notice of plaintiffs' objections and that "[t]here can be no real argument the contractors agreed to the inclusion of interest arbitration in the 2017 Agreement because it is plain on the face of the NJAB's decision." (*Id.*, at 10). Plaintiffs also assert that, by filing this current action in Court, plaintiffs preserved their arguments because "they sought relief before the arbitration in question." (*Id.*, at 10).

Having reviewed all authorities cited and the record before it, the Court rejects defendants' arguments, finds this dispute properly before the Court, and determines that plaintiffs' action is

not time-barred.  As an initial matter, the Court determines that this specific dispute is properly before the Court.  The Eighth Circuit has distinguished between three types of challenges to arbitrators' authority to resolve disputes:  (1) jurisdictional challenges of a procedural nature, (2) jurisdictional challenges of a substantive nature, and (3) challenges that relate to the merits of the arbitrators' decision.  *Hope Elec.*, 380 F.3d at 1098 (citing *Int'l Ass'n of Bridge, Structural, Ornamental, and Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. & Constr. Prods., Inc.*, 359 F.3d 954, 956 (8th Cir. 2004)).  Absent a clear and express contractual grant of authority to arbitrators to decide all issues of arbitrability, the Eighth Circuit considers certain issues of arbitrability appropriate for arbitrator resolution and other issues of arbitrability appropriate for judicial resolution.  *Id.*

For example, with respect to the first type of challenge, issues of procedural arbitrability must be submitted to the arbitrators themselves for resolution.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964); *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 748–49 (8th Cir. 1986).  Neither the Union nor plaintiffs seek to characterize their dispute in this way.

With respect to the second type of challenge, jurisdictional challenges of a "substantive nature, on the other hand, are generally for the courts to resolve and relate to 'two gateway questions of "arbitrability,"' namely, the underlying issues of contract interpretation necessary to determine whether the parties are subject to a valid contract that calls for arbitration, and whether the contract, in fact, authorizes the arbitrators to decide the substantive issue submitted for resolution."  *Hope Elec.*, 380 F.3d at 1098 (citing *Shopman's Local 493*, 359 F.3d at 956); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–46 (1995) (holding that it is the role of the courts to determine whether parties are bound by valid contracts that call for

arbitration); *AT & T Techs., Inc. v. Comm. Workers*, 475 U.S. 643, 649 (1986) (holding that it is also the role of the courts to determine whether a valid arbitration agreement applies to the subject matter of the issue submitted for arbitration, unless the parties have unmistakably agreed otherwise); *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960) ("[T]he judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made.")).  Here, plaintiffs argue this is the type of challenge they make.  Based on the Court's review, the 2017 Agreement does not unambiguously grant the arbitrators the authority to decide such substantive jurisdictional issues (Dkt. No. 13-1), and no party argues to the Court at this stage that it does.  Accordingly, the Court rather than the arbitrator is the proper authority to resolve plaintiffs' substantive jurisdictional challenges.

With respect to the third type of challenge, a court's review for merit-based challenges is highly deferential.  *See Walsh v. Union Pacific R.R. Co.*, 803 F.2d 412, 414 (8th Cir. 1986).  Under that standard, a court refuses to enforce arbitration awards only where the awards do not draw their essence from the parties' underlying agreements, and "in determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts resolved in favor of the arbitrator's award."  *Id.*; *see also Lackawanna Leather Co. v. United Food & Commercial Workers Int'l Union*, 706 F.2d 228, 230–31 (8th Cir. 1983) (en banc).  The Union wishes to push the parties' current dispute into this category.  Having reviewed the record before it, the Court cannot conclude that the arbitrator made a finding of fact that the parties agreed to include a successive interest arbitration provision in the 2017 Agreement.  The Court rejects the Union's argument on this point.

The Court determines plaintiffs bring a substantive jurisdictional challenge in the current action.  Having determined that this dispute is properly before the Court, the Court turns to the question of whether plaintiffs properly preserved and raised their objections to the successive interest arbitration provision.  In *Local Union No. 36, Sheet Metal Workers' International Association v. Atlas Air Conditioning*, the Eighth Circuit described the methods by which a party opposed to arbitration could challenge arbitrators' authority, explaining the party opposed to arbitration could:  (1) object to the arbitrators' authority, refuse to argue the arbitrability issue, and proceed to the merits of the agreement; (2) seek declaratory or injunctive relief from a court prior to commencement of arbitration; or (3) notify the arbitrators of a refusal to arbitrate altogether. 926 F.2d 770 , 771–72 (8th Cir. 1991) (applying *Franklin Elec. Co. v. Int'l Union, UAW*, 886 F.2d 188, 191–92 (8th Cir. 1989)).  The Eighth Circuit reaffirmed these three options in *Hope Electrical*. *See* 380 F.3d at 1101.  Having reviewed the authorities cited, this Court determines the three options outlined in *Atlas Air Conditioning* remain controlling law.

In *Atlas Air Conditioning*, the Eighth Circuit determined the party opposed to arbitration did not follow any of the three methods and was therefore barred from asserting its challenge in court.  In *Hope Electrical*, the Eighth Circuit determined that the party opposed to arbitration filed a timely motion to vacate the arbitration award and was permitted to bring its challenge.  Here, the Court determines that plaintiffs have opted to follow method two, which by the plain language of *Atlas Air Conditioning*, they may do.  Plaintiffs filed this action seeking declaratory or injunctive relief from a court prior to commencement of arbitration.  Plaintiffs' action, therefore, is not time-barred.

It is unclear whether, under the circumstances presented in this case, the Court is required to examine whether plaintiffs provided sufficient notice to the arbitrators of their objections so as

to preserve their objections. The Eighth Circuit observed in *Hope Electrical* that, where the parties' collective bargaining agreement clearly apportions to the arbitrators not only the authority to resolve the merits of a grievance but also the power to resolve underlying issues of arbitrability, a court may be more reluctant to excuse a party's failure first to offer the arbitrators themselves an opportunity to address the issue of arbitrability. 380 F.3d at 1103; *see also Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians*, 317 F.3d 840, 851 n.5 (8th Cir. 2003) (citing *AT & T Techs.* in the context of a tribal gaming management contract dispute and stating, "[t]he question of arbitrability itself is an issue for the court *unless the parties have unmistakably agreed otherwise*") (emphasis added); *AT & T Techs.*, 475 U.S. at 649 ("[W]hether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance . . . is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). In *Hope Electrical*, as in the present case, the underlying agreement did not grant arbitrators the authority to decide jurisdictional issues. The *Hope Electrical* court determined it would be a harsh result to hold jurisdictional challenges waived by a failure to present the jurisdictional issue to the arbitrators under those circumstances. *Hope Elec.*, 380 F.3d at 1103. Here, even if plaintiffs were required to provide sufficient notice to the arbitrators of their objections, the Court concludes on the record before it that plaintiffs satisfied that requirement.

For these reasons, the Court denies the Union's motion to dismiss plaintiffs' amended complaint as time-barred.

## V.     Conclusion

The Court denies as moot the Union's motion to dismiss the plaintiffs' original complaint (Dkt. No. 11), and the Court denies the Union's motion to dismiss the plaintiffs' amended complaint (Dkt. No. 15).

It is so ordered this 9th day of November, 2020.

Kristine G. Baker
United States District Judge